Oral argument not to exceed 15 minutes per guide. Kevin Carlson, Supervising Attorney. Good morning, may it please the court. My name is Kevin Carlson, counsel for Darrell Reynolds. With me today is Mr. Cody Reeves. Mr. Reeves is a third year law student at He will be arguing this morning on behalf of our client, Mr. Reynolds. May it please the court, good morning, my name is Cody Reeves. On behalf of defendant and appellant Darrell Reynolds, I would like to reserve three minutes of my time for rebuttal. Your honors, the government has proved its case in a way that should never be allowed in any American courtroom. An out-of-court witness was able, in essence, to testify against Mr. Reynolds, though the government failed to either produce him at trial or to preserve the testimony by deposition because the court allowed a police officer to report his testimonial statements directly implicating Mr. Reynolds in the crime charge. If this court affirms, it will create an end run around the confrontation clause, effectively allowing prosecution witnesses to testify anonymously by speaking to police officers out of court, leaving the decision of whether to subject these witnesses to confrontation entirely to the prosecutor's choice. At issue in this case, your honor, are two statements by Officer Ferris. The first statement is reviewed de novo because counsel objected. The second statement, plain error because counsel did not object. I'd like to go to the first statement, which was that Officer Ferris had received information that Mr. Reynolds was selling illegal narcotics. Is that the astounding out-of-state statement that you're talking about? Yes, your honor, a statement directly implicating Mr. Reynolds in the crime charge. What makes you think it was offered for the truth of the matter asserted? There's another obvious purpose. It was offered to explain why the officer did what he did. That would not be hearsay. Correct, your honor, and that was the basis that the district court admitted the statement was that it was offered as background to explain why the officer. Would you be surprised if I told you that that is one of the most common rulings that a district judge makes in a trial of this type, and I'm not aware of anybody yet at the appellate level who's characterized that as impermissible hearsay. Can you cite me a case or give me some clue as to who might have said that was inappropriate? Yes, your honor. This court in Cromer and Powers, both under a plain error standard, found that similar statements violated the confrontation clause. In Cromer, a case from this court in 2004, there were three statements at issue. The government addressed statement one and statement three in its brief, but did not address statement two, which is the one that is most analogous to the statement in this case. The first statement was that a particular residence, 3284 Buchanan, was a residence associated with selling drugs. The court held that statement was fine. It was background  evidence. However, the second statement tied the defendant to the drug residence and said that he frequented the drug residence, and that was not okay. The court said it was not background testimony because it could only be to help establish the fact that the defendant had been involved in illegal drugs. It seems like that's much more analogous to the second statement you're complaining about than the first. Yes, your honor. It is similar also to the second statement identifying the residence as Mr. Reynolds' residence. However, we also have the statement in Powers where this court held that testimony about alleged prior criminal behavior was not necessary to set the context of a sting operation. There, under a plain error standard again, a police officer testified that the defendant was a well-known cocaine supplier in the city of Detroit. The court said that this testimony about alleged criminal activity was not necessary to set the context for the jury. Well, and it also doesn't seem to be explanatory of the actions the officer took, so it doesn't really seem to be analogous to me. Your honor, we believe it is analogous in that it relates directly to the crime that Mr. Reynolds is charged with in this case. It's unlike the statement about the Buchanan residence because the residence was not on trial that explained why the officers went there and took the action they did. However, tying Mr. Cromer specifically to the residence went too far. And it informed the jury that someone had implicated the defendant in the illegal activities, which is critical here because there was no other evidence showing Mr. Reynolds directly distributing narcotics. Officer Ferris admitted as much in his testimony. And so, your honor, directly implicating Mr. Reynolds in the crime charge when no other evidence showed him handling, holding, or handing over narcotics, to hold that that statement doesn't violate the Confrontation Clause, we feel would eviscerate the Confrontation Clause. And the court relies first on this statement not being an out-of-court statement and relies on United States v. Pew for this proposition, an opinion by this court unpublished in 2008. But if the court were to adopt the government's proposed rule based on Pew, then it would allow clever attorneys to elicit testimony passively. In other words, they could do what they did in this case, say, I had received information that X occurred. When a statement directly stating who the declarant was, declarant X told me, would violate the Confrontation Clause. And so just by eliciting the testimony passively, the government is allowed to skirt around the Confrontation Clause and hear, say, jurisprudence. There's no real issue, your honor, that either of these statements are testimonial. The standard was laid out in Cromer and it's clear that it's whether a reasonable person in the declarant's position would anticipate a statement being used against the accused in the investigation prosecuting the crime. That's not an issue, really an issue here, whether this is an out-of-court statement and whether this was offered for the truth of the matter asserted. In neither of the first two statements, the speaker isn't identified. I'm sorry, your honor? The speaker is not identified in either of the first two statements. And maybe in the third, I don't remember. Correct. And on page 675, your honor, of Cromer, the court says that there's actually a heightened danger when the declarant is not identified. Crawford is clear that it's the right to confrontation that Mr. Reynolds was denied here. He did not even know who, indeed, he would need to cross-examine based on this statement. And we think that relying on Pew for this not being an out-of-court statement would truly eviscerate the Confrontation Clause. In Cromer, your honors, it was critical to the court's determination that the testimony explicitly, albeit not directly, informed the jury that someone implicated the defendant in illegal activities. That's exactly what we have here, where no other evidence pointed to Mr. Reynolds holding, handling, or handing over narcotics. Tell us about the third statement and why it's not invited error. Yes, so the second statement is actually two statements. So there was one that the residence was Mr. Reynolds' residence, and the second part of that statement was that other people in the community had told Officer Ferris what was going on there. And so this statement is strikingly similar to the statement in Powers, where this court held that the confidential informant's identification of a white van, that a white van was the defendant's vehicle, clearly violated the Confrontation Clause. The second part of this came about during defense cross-examination, correct? Correct, your honor. So it's the defense attorney who is treating the statement as though it was offered for the truth of the matter asserted, right? Your honor, it did come out on cross-examination. However, I don't think that changes our analysis. What is it that Judge Norris is asking you about? Invited error. Invited error. Perhaps on the second statement, your honor? On the third statement. Part two, part two of the second statement. Yes, your honor. It very well could be invited. The first statement, however, was not invited. And it is the most damaging statement in this case, especially where Officer Ferris admitted that nowhere on the evidence, in the evidence, do we see Mr. Reynolds holding, handling, or handing over narcotics when the government charged distribution. Had it charged conspiracy. Somebody did, though. Somebody handed over narcotics. Correct. And there was evidence that your client's voice was the voice that is heard doing the deal, correct? That is what the government said at trial, however. That's what the government's evidence offered at trial was, right? Yes, was that it was Mr. Reynolds who was conducting this transaction. He was describing the nature of the pills. Nowhere on the video do we see him hand over the pills. We also hear... But you at one point see him speaking. Yes. So you could identify him as the source of the voice. You wouldn't have to know otherwise that that was his voice. Correct. The jury never heard Mr. Reynolds speak. He did not testify in this case. Officer Ferris... Talked about the videos. Yes. Officer Ferris' voice identification was based on his arrest of Mr. Reynolds and his... Why couldn't the jury have made a voice identification from seeing Reynolds talk? I don't know, Your Honor, that we ever see on the video Mr. Reynolds speaking. I could see how you could say that, but when I looked at it, it looked at six minutes and thirty-three seconds like he was speaking. Yes. And it was just very brief, but otherwise he's eating. Right. He's eating, but at one time the voice is his when he opens his mouth and seems to be saying that. So a jury, if they're as reasonable or unreasonable as I am, could say that's his voice. And there doesn't seem to be any indication that there's someone else there on these videos. Right. And Mr. Reynolds... Normally people in that kind of a situation you would think would say, hey Jim or hey or hey. It's just... And Reynolds... So when you repeatedly state when there's no evidence that he's handling narcotics is a little bit of an exaggeration. I mean, there's a pretty clear evidence that he's handling narcotics, evidence that a jury could almost certainly would believe. There's certainly evidence... Is that true? Your Honor, I would say no. There's evidence that he's sitting at the table. Ms. Henson leaves the room and comes back. We see him eating at one point in the video. We never see him. Officer Ferris admitted as much. We don't ever see him holding narcotics. We hear him discussing narcotics, if that is indeed his voice. But the counsel for Mr. Reynolds... If that's his voice is what I'm saying, then there is evidence. Sure. But whether that would be enough without this statement, we think that's the key, Your Honor. We hear him discussing narcotics. We hear him talking about them. But we never see him handing them over. And without this initial statement at the outset of Officer Ferris' testimony that someone, whether it's a confidential informant, someone told law enforcement that Mr. Reynolds had distributed narcotics, he was selling them. And so without that statement, I don't think that the jury gets to a point where they convict on distribution. Again, maybe conspiracy to distribute, the fact that he was in the room while this was based on just the voice identification, we're not sure that the jury would have got there, Your Honor. In order not to get there, they would have had to suspect there was someone else there. Correct. And counsel for Mr. Reynolds pointed to parts of the video where it sounded like that Mr. Franks was saying, hi Robert, or hi Rob, and the government said he was saying hi mom, which was a nickname of Chatty Henson. And if I may just finish answering your question. And so on the tape, Your Honor, on the video, we pointed to a number of places where we thought that Mr. Poe was there. And indeed, I think it's telling that in the first video, the jury saw Kevin Franks on his drive to Mr. Reynolds' house and heard him talking to Linda Poe on the phone, Robert Poe's wife, who he busted for drugs in a similar controlled buy in the same month, January of 2014, as Mr. Reynolds. Interchange includes something like, we'll do that later? Right. It's a discussion with Linda Poe. About something that's going to happen after what they're driving up to now. Right. We think it just speaks to the... It sort of supports the idea that Poe, the whole Poe thing is separate. We think it speaks to the fact that Robert Poe did exist. This is not someone who Mr. Reynolds was making up. This wasn't a fiction of his imagination. This is someone who was real, whose wife was dealing drugs, who also conducted a controlled buy with Mr. Franks. After this? After this, in the same month, in January 2014. If there's nothing further, we'll hear from your adversary. Thank you. May it please the court, Greg Rosenberg on behalf of the United States. The district court did not err with respect to its evidentiary rulings or in instructing the jury in this matter. As we've heard from the appellant, he is appealing on the two challenged test pieces of testimony from Officer Ferris. But neither one implicates the rule against hearsay or the confrontation clause, because neither one was offered for the truth of the matter asserted. Now, the appellant has offered a bright line rule for distinguishing between permissible mere background and a testimony that's offered for the truth of the matter asserted. And the appellant's rule is that if the statement or testimony at all implicates the defendant in any sort of illegal activity, it must be offered for the truth of the matter asserted. While these type of bright line rules have a certain appeal to them, it's simply not the law. What courts actually do here is they look at the factual context and pay attention to three important factors. One would be, is there a reason for the government to have to set the background or set the context? The second is, does the testimony establish an element of the offense charged? And the third factor is, was this testimony a significant portion of the witness's testimony? And relatedly, did the government subsequently rely on that testimony at issue? On all three of those factors, they all counsel towards finding this testimony to be mere background as opposed to hearsay evidence or evidence that would implicate the confrontation clause. Looking first at what we've called Statement 1, that Officer Fares had information the defendant was selling illegal narcotics, there is a clear reason why the government needed to provide this type of background or context setting here. The entire theory of defense from opening argument through cross-examination and closing was that the government and the confidential informant, Mr. Franks, had basically conspired to set up Mr. Reynolds when the true culprit was Robert Poe. So when you have this sort of theory of defense, and I think the United States v. Silva case decided by the defendant in its opening brief, goes to this very point. That case says, yes, the government can introduce this type of context or background information to show that it didn't have some nefarious purpose. It wasn't out there meddling in people's lives and targeting this person. There was a reason why they were investigating the defendant. And so that's exactly what we have here. The second point, establishing an element of the offense. I think the court should take special note of this because I think the defendant's rule is far more broad. He suggests if it's any sort of illegal activity mentioned in that testimony, it must be offered for the truth of the matter asserted. But that's not what the cases say. I think looking at United States v. Gibbs is a good example here. In that case, the confidential informant, that statement, which was specifically attributed to the confidential informant in the testimony, was that the defendant had long guns in his basement bedroom. Now clearly this implicates the defendant in some sort of illegal activity. But the court nonetheless found that this was mere background, not offered for the truth of the matter asserted. Because in that case, the defendant was charged with being a felon in possession of a pistol, not a long gun. So in Gibbs, which I would argue is much closer to implicating the defendant in the elements of the charge defense than what we have here, if Gibbs is permissible as background information, so too is the testimony here. I think it would perhaps be a different case if what was charged was an ongoing conspiracy to distribute hydrocodone. Because then you could say, well, past drug dealing activity could be evidence of an ongoing conspiracy and the defendant's connection there too. But that's not what was charged here. Here what was charged were two specific dates of distribution. And on the second date, also possession of a firearm. So what the defendant had done in the past with respect to drug distribution could not establish any element of the offenses charged by the government. Then there's the third factor. Was this a significant portion of the Officer Ferris' testimony? And did the government rely on it? Well, no. This was both sets of testimony were isolated pieces of testimony. The witness did not return to it. And notably, the government never mentioned it again in any questioning of any other witness or in its closing arguments. So one would think if this were so important to convicting the defendant that the government would refer to it in its closing argument. But there is no such mention of that. Again, Gibbs is instructive on this because in that case, there was a reference in the government's closing argument to the out-of-court declarant, confidential informant. And even with that one passing reference in closing arguments, again, this court held no, it was not offered for the truth of the matter asserted. It was permissible background. So once again, if Gibbs is on the permissible side of the line, so too must our case be on the permissible side of the line. I think United States v. Barry Scott provides a good contrast. There, the government in the declarant's identification of the defendant in the crime charged. So in that case, yes, that's not mere background. That is being offered for the truth of the matter asserted. Again, I think United States v. Warman is another good example because it has testimony on kind of both sides of the line. The court noted that there were multiple statements from about the FBI's investigation into this outlaw motorcycle club and the defendant's involvement with that organization. And that was fine. That was mere background. What was not okay was an out-of-court declarant statement that the defendant had supplied narcotics to the outlaw motorcycle club drug conspiracy because that was the offense being charged in that case. So again, you see these factors being applied. Not a bright line rule, but at least three sets of factors, all of which weigh in favor of admitting this testimony here. With respect to the first statement that Officer Fares had information the defendant was selling mere background and not offered for the truth, there's a second reason that it does not implicate the hearsay rule or the confrontation clause, which is that it doesn't even put before the jury a statement of an out-of-court declarant to begin with. I think United States v. Pugh establishes this. In that case, the officer testified that he was given the name of Walter Pugh as a possible suspect. The court said, in addition to that being mere background information, it didn't even put before the jury a statement of an out-of-court declarant. So if you don't even have that first kind of fundamental piece of a hearsay violation, you don't violate the rule against hearsay and you don't violate the confrontation clause. I have sort of a technical question. Let's say that you have some prior criminal activity that you, the government, are trying to get in. Maybe you're trying to get it to show motive or maybe you're trying to sneak it in as propensity evidence. The 404B. Somebody like you. And the defendant's lawyer says, aha, I have two grounds now I'm going to challenge this. One is that it's hearsay and the other is that it's propensity evidence under the rule that prohibits propensity evidence. Is there anything wrong with doing it under hearsay? Maybe he thinks he has a stronger argument under hearsay. Well, by definition, it isn't going to the elements of the defense. It's going to some other fact. Is there anything wrong with the defendant attacking it on hearsay grounds, regardless of the fact that it doesn't go to the elements of the offense? Do you see what I'm saying? Some things are going to be relevant facts that don't go to the elements of the offense. Well, I think that if the argument is really one of propensity, one of character evidence, then the objection should be made on that ground. So he shouldn't be able to do it on hearsay grounds. Correct. That seems hard. I mean, if they have two strong, maybe it's clear hearsay. All right. Elmer told me that he had a propensity. He should be able to throw that out on propensity grounds without saying, well, it isn't offered to show the elements of the offense and therefore the hearsay ground is gone and you have to win or lose on the basis of the propensity argument, should you? I mean, that doesn't... I don't think the defendant would be forced into that choice. I don't think anything... But you said he ought to do it the other way. Well, I don't think anything would stop him from making two arguments in the alternative. I understand, but what should stop him from making one of those two? But your argument sort of does, because it says if the hearsay objection is based on a fact that doesn't go to the elements of the offense, then the hearsay objection loses. Right. Do you see what I'm saying? I think, yes, and it's kind of unremarkable that an argument on one grounds may undercut an alternative argument that you put forward. I don't think anything stops the defendant from forcefully putting forward both those arguments and a judge is well-equipped to consider those arguments independently. All I'm saying is that your argument seems to undermine one of those two arguments, but you can't make a hearsay objection to some fact that doesn't go to the elements of the crime. I think that it goes to something else, which shows that he has, for instance, propensity to commit the crime. Well, I think, Your Honor, I have not put forward the elements of the offense as the kind of bright-line rule. I think it's just one of several factors that the Court would consider. That is something that goes to really the jury instruction issue. Of course, Your Honor. This is really a factual question. I did not go back and look. I was a district judge for a long time, but I've been on this Court for a while, too. But at one time, the presence rule that is mentioned, the briefing makes it sound like that's a conspiracy instruction. I believe, from my memory, that it's also given frequently, if not always, in cases in which aiding and abetting is charged. Yes, Your Honor. And so I was surprised with the, oh, this is a conspiracy charge argument. And is it no longer common to give that instruction if you have an aiding and abetting, if aiding and abetting is being instructed? Your Honor, I think aiding and abetting, I think that's Instruction 4.02, and that language is still part of the aiding and abetting instruction. I think perhaps the focus on conspiracy Is aiding and abetting charged in this case? There was not an 18 U.S.C. Section 2 charge, although we can Was it struck on Section 2? I don't believe, I don't want to commit myself to that, because I haven't, in all of the briefings, heard that specific instruction. That's all right. I can't say. It was just a personal curiosity, and I didn't quite understand why the briefing was as it was. Yeah, I think maybe what goes to that is why the briefing focused on conspiracy was that the language proposed by the defendant below was adopted from the conspiracy instruction. Your Honor is correct that there's similar mere presence language in aiding and abetting. There's also mere presence language in actual versus constructive possession, as well as joint possession. And I think ... Go on to something else. You fully answered my question. I just don't want you to be wasting, not wasting, but spending your time on my question, which had nothing to do with anything except my own curiosity. Well, I'm happy to segue into the jury instruction piece of this case, unless Your Honors have further questions on the evidentiary rulings. I would just say, with respect to the mere presence jury instruction, the requested instruction by the defendant essentially would have created more confusion than clarity. And the district court had ample grounds for relying on the definition of distribute to inform the jury on what they would have to find in order to convict on the two distribution counts. The definition of distribute says the defendant has to deliver or transfer the controlled substance. And there's simply no basis in the record to believe that the jury mistook delivered for something that could be confused with mere presence. I think the briefs lay out why mere presence is relevant when you're talking about possession offenses, because it draws that line between constructive possession and mere presence or joint possession and mere presence. You don't have that issue when you're talking about distribution. And so I think the reliance on cases that charged possession with intent to distribute are inapposite here. Because in those cases ... Thank you, Your Honors. Your Honors, I want to go directly to the three factors that the government laid out that they said that contrary to a bright line rule, the court looks at these three factors. First whether the testimony was to set the background. We see in Powers that a statement about prior criminal activity was held to violate the Confrontation Clause under a plain error standard. Second, the government discussed whether the testimony went to an element of the offense charged. But the government's rule would require that the testimony or that the statement that's elicited is about future conduct. So in other words, a statement in this case that if Officer Ferris had said, I had received information that Mr. Reynolds sold drugs yesterday, that would not violate the Confrontation Clause because it doesn't speak to the direct act of selling on this day. I don't think that Crawford supports such a fine reading, especially when someone's constitutional rights are at issue. Third, whether it was a minuscule portion of the testimony. Contrary to the government's brief and its argument today, the government relied on the statement, the second statement, that it was Mr. Reynolds' residence multiple times on page 801 to 810 during the closing arguments. And so he did return to it. And to the point that was brought up when I was first up here, in Cromer the part of the testimony was also elicited on cross. And the court held it the mere... Can you remind me, how does the residence help the defendant? I mean, or help the government? I mean, we know that these drugs were handed over in a building where he was the whole time. Your Honor, we think that whether it was Mr. Reynolds' house or not gives some weight to whether he was indeed selling drugs there or not. If it's not his house, maybe it's less likely that he is sitting there selling drugs out of this house that's actually not his. And indeed, Officer Ferris admitted that he was not really sure whether it was Mr. Reynolds' house or not. That would seem to be helpful to the defendant, not harmful. And that was elicited on cross-examination. But it's still, that was something that the government returned to in closing arguments several times. He stated that Officer Ferris gave the money... ...pretty comfortably at home in those videos. We believe, Your Honor, that it was Chatty Henson's house, which is his girlfriend. And so he would have been comfortable at that house. But we do think that establishing... So it's more likely to have been selling drugs, or less likely to have been selling drugs if he was there in his girlfriend's house than if he was there in his own house? Is that the idea? We believe so, Your Honor. And also, with regards to whether it's an element of the offense charge that's not cited in any case law as a factor, because, again, it makes no sense. It would require someone to speak about future conduct. You will see Mr. Reynolds. Frankly, all of that seems to me to make something that is really simple overly complex. I mean, the court should go first to whether it's offered for the truth of the matter asserted. Here, in my judgment, it wasn't. But, you know, that's the critical thing. I mean, all this other stuff is nice to be able to say in an argument, but it's not the core of what... Just another three-part test. Yeah. But we shouldn't be searching for those. We should simplify, not make it more complex. Well, did you have anything else to say? Just quickly, and then I wanted to close. Just that Cromer, Your Honor, speaks to the fact that this statement that he was selling illegal narcotics directly implicates him in the criminal behavior charge, not that it's an element of the offense charge, and that it could only be offered for the truth of the matter asserted to establish, when no other evidence did, that Mr. Reynolds distributed narcotics, and for all those reasons, we respectfully ask that this court reverse the decision of the district court and remand the case for a new trial. Thank you. We thank you both for your argument. To you, Mr. Carlson, and you, Mr. Reeves, in my experience, the clinic at the University of Michigan is doing a fine job, and we're happy to be able to give the students an opportunity to argue. We appreciate the arguments both of you have given, and we'll consider the case carefully. Thank you.